WO

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Margaret Browning, | ) | No. CV-09-8094-PCT-GMS |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Michael J. Astrue, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Pending before the Court is Plaintiff Margaret Browning's appeal of the Social Security Administration's (the "Administration") decision to deny benefits. (Dkt. # 1.) For the following reasons, the Court affirms the decision in part and vacates and remands it in part.

**BACKGROUND**

**I.  Factual Background**

The evidence contained in the administrative record includes the following. Browning, who was born in November 1958, alleges that she has been disabled since September 25, 2005. (R. at 29.) Prior to the alleged disability date, Browning's had relevant work experience as an administrative assistant, a legal assistant, and other jobs. (R. at 115.)

In late 2004, Browning, began complaining of chest pain and fatigue. (R. at 276–81.) In September 2005, Browning had normal coronary arteries, but a cardiac catherization

showed reduced ventricular function with an ejection fraction of twenty percent, indicating reduced functionality of the left ventricle of the heart. (R. at 226.) Browning was admitted to the hospital for acute respiratory failure secondary to acute interstitial edema, and she was also diagnosed with morbid obesity, hypertension, and gastroesophageal reflux. (R. at 133–37.) Tests also revealed a patent foramen ovale (a small hole in the atrial septum of the heart), which required surgery to close, an enlarged left atrium and wall motion abnormalities in the heart, and scarring on the lungs. (R. at 136, 197, 212, 218–19, 254, 311.)

From November 2004 to February 2006, Browning sought treatment from Kevin Earlywine, a physician's assistant. (R. at 278–98.) Earlywine expressed concern for Browning's cardiac health and noted that she suffered from fatigue, anxiety, insomnia, depression, and generalized pain. (R. at 279, 285.) Although some of Earlywine's exams showed both positive straight leg tests, which indicate back pain, and decreased range of motion in Browning's back and neck, most of the examinations revealed normal results. (R. at 278–98.) Still, Earlywine prescribed medications for Browning's pain. (R. at 287–89.)

In April 2006, Dr. Brent Layton, a non-treating physician, examined Browning and diagnosed her with morbid obesity, hypertension, hyperlipidemia, gastroesophageal reflux disease, continuing low back pain for which she had received previous treatment, bilateral carpal tunnel, memory problems and sleep apnea. (R. at 260–61.) The examination, however, was relatively normal, and Browning was able to dress and undress, get up from a chair, get on the examining table, walk, walk on her heels and toes, bend at the hips to seventy or eighty degrees, do a half squat, hop on each leg, and perform a negative straight raising test. (R. at 260.) Based on these findings, Dr. Layton concluded that Plaintiff could perform light work. (R. at 262–63.)

A couple months later, a state agency physician reviewed Browning's medical records and concluded that Browning could perform light work, but could only occasionally climb, stoop, kneel, crouch, and crawl, and that she needed to avoid concentrated exposure to hazards. (R. at 269–72.) The physician also noted that Browning's subjective complaints were incredible because she could not objectively verify her complaints and because the

medical evidence he found made it difficult to attribute her alleged limitations to her medical condition. (R. at 273.)

Later that year, Dr. Steven Helland examined Browning and diagnosed lumbar degenerative disc disorder, lumbar radiculopathy, lumbar spondylosis, and a lateral protruding disc. (R. at 396.) Other than some limitation in range of motion, however, the examination revealed otherwise normal results. (*Id.*)

In September 2007, Browning sought treatment from Dr. Sean Wilson. (R. at 380.) Six months later, Dr. Wilson opined that, in an eight-hour work day, Browning needed to lie or recline for all eight hours, could never lift, and required frequent unscheduled breaks; Dr. Wilson also concluded that Browning could stand or walk for fifteen minutes at one time and for a total of one hour per day, sit for two hours at a time and for a total of five hours per day. Additionally, Dr. Wilson found that Browning's pain killers caused sedation. (R. at 378.) Based on these findings, Dr. Wilson concluded that Browning's symptoms would frequently interfere with work-related activities. (R. at 378.)

Browning further described her impairment as follows. She stated that she suffered from cardiac problems, stroke, and back pain. (R. at 519–26.) She also alleged that she suffered from memory and concentration problems, but she had never been treated by a mental-health professional or received any prescriptions for mental-health medication. (R. at 526–27.) Furthermore, Plaintiff testified that she had difficulty performing daily tasks. (R. at 527–33.) For instance, she stated that she stayed home most of the day, had a friend help with household chores, and did not engage in many social activities. (R. at 527–28.) She likewise estimated that she could not lift ten pounds, could stand for only fifteen minutes at one time, and could sit for only an hour at a time. (R. at 529.) On the other hand, Plaintiff also testified that she occasionally went shopping and left her home several times per week to go to the library or to run errands. (R. at 528.) Prior to the hearing, both Browning and her husband echoed many of the same statements about her impairments, and Browning also mentioned that her pain medication makes her drowsy and gives her stomach problems. (R. at 62–67.)

Sandra Richter, a vocational expert, further described how Browning's impairments affected her ability to work. She testified that one of Browning's past jobs was as an administrative assistant, which was skilled work with a specific vocational preparation ("SVP") of six that required sedentary exertion.[1] (R. at 536–37.) After answering a series of hypothetical questions, Richter stated that, given Browning's impairments, she could perform her past work as an administrative assistant. (R. at 537–38.) The ALJ did not ask Richter whether her opinions were consistent with the Dictionary of Occupational Titles. (*See* R. at 536–43.)

## II. Procedural Background

On October 21, 2005, Browning applied for disability insurance benefits, alleging a disability onset date of September 25, 2005 based on cardiac impairments, degenerative disc disease, obesity, and mental impairments. (R. at 14, 29.) Browning's application was denied both initially and upon reconsideration. (R. at 38, 49.) Browning then timely requested a hearing, and Administrative Law Judge John W. Wojciechowski ("ALJ") held a hearing in February 2008. (R. at 510.) On May 15, 2008, the ALJ concluded that Browning was not disabled, and the Appeals Council denied Browning's request for review on March 27, 2009, leaving the ALJ's decision as the Commissioner of Social Security's final decision. (R. at 3, 11.) Browning then filed suit in this Court. (Dkt. # 1.)

## DISCUSSION

## I. Standard of Review

The Court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A reviewing federal court addresses only the issues raised by the claimant in the appeal from

---

[1] Plaintiff points out that the Dictionary of Occupational Titles ("DOT") does not identify an administrative assistant job that she might have performed at SVP six. There is, however, a job listed as "Administrative Assistant - Any Industry," which has an SVP of seven.

- 4 -

the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may "set aside a denial of benefits only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

The Court may not "substitute [its] own judgment for that of the ALJ." *Id.* The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). At the same time, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). The Court also may not "affirm the ALJ's . . . decision based on evidence that the ALJ did not discuss." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (emphasizing the fundamental rule of administrative law that a reviewing court "must judge the propriety of [administrative] action solely by the grounds invoked by the agency" and stating that if "those grounds are inadequate or improper, the court is powerless to affirm the administrative action"). Even if the ALJ erred, however, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**II. Analysis**

Whether a claimant is disabled is determined using a five-step evaluation process. A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity, (2) that her disability is severe, and either (3) that her impairment meets or equals one of the specific impairments provided in the Listing of Impairments found at 20 C.F.R. pt. 404, subpt. P, app'x 1, or (4) that her residual functional capacity ("RFC")

precludes her from performing her past work. 20 C.F.R. § 404.1520(a)(4) (2009). Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. *Id.* "This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education." *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007).

At step one, the ALJ found that Browning has not engaged in substantial gainful activity since September 25, 2005. (R. at 16.) At step two, the ALJ concluded that Browning has the following severe impairments: lumbar degenerative disc disease, status post-cardiovascular accident, hypertension, and obesity. (*Id.*) At step three, the ALJ found that Browning does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app'x. 1. (R. at 17.) After determining Browning's RFC, the ALJ concluded at step four that Browning was capable of performing her past relevant work as an administrative assistant. (R. at 17–20.) The ALJ did not proceed to step five because the ALJ concluded that Browning did not meet the first four steps.

Browning contends that the ALJ erred (1) at step three by failing to properly evaluate whether Browning's impairments met or equaled a listed impairment, (2) by improperly rejecting Browning's testimony regarding her pain and medication side effects, (3) at step four by finding that Browning could return to her previous work as an administrative assistant, (4) by rendering a decision that is inconsistent with the Commissioner's later decision that Browning is disabled.

**A.    Listed Impairments**

If a claimant has an impairment or combination of impairments that meets or equals an impairment found in the Listing of Impairments, then the ALJ must find the claimant disabled. 20 C.F.R. § 404.1520(d). For a claimant's impairment to match a listing, it must, for a period of twelve continuous months, "meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not

qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also* 20 C.F.R. § 404.1525(d) ("To meet the requirements of a listing, [the claimant] must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."); 20 C.F.R. pt. 404, subpt. P, app'x. 1 (stating the twelve-month rule). Similarly, for a claimant to show that an impairment is "equivalent" to a listed impairment, she "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment. *Zebley*, 493 U.S. 521, 531 (1990) (citing 20 C.F.R. § 416.926). In making this determination at step three, because more than a "boilerplate finding" is required, *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001), the ALJ "must adequately explain his [or her] evaluation of alternative tests and the combined effect of the impairments," *Marcia v. Sullivan*, 900 F.2d 172, 175 (9th Cir. 1990). The ALJ is required, however, only "to discuss and evaluate the evidence that supports his or her conclusion[,]" but not necessarily "under the heading 'Findings.'" *Lewis*, 236 F.3d at 513. Therefore, even if not in the section expressly addressing step three, an ALJ does not err if he or she, for example, adequately discusses relevant "subjective symptoms, medical and treatment history, impressions and diagnosis from . . . physicians, as well as information about [the claimant's] daily activities and living situation."*Harris v. Astrue*, 2009 WL 801347 at *7 (N.D. Cal. Mar. 25, 2009). At the same time, where the record contains evidence that both supports and undercuts a finding that an impairment did not meet or equal a listed impairment, the ALJ's failure to address the discrepancy constitutes error. *See Espejo v. Astrue*, 2009 WL 1330799 at *3 (C.D. Cal. May 11, 2009) (remanding the case where the record included conflicting evidence regarding whether the claimant's impairment met Listing 1.04A because the ALJ did not address the issue).

      The ALJ concluded that Browning's impairments did not meet or equal any listed impairment, specifically considering Listing 1.04 (disorders of the spine or spinal cord) and 4.02 (chronic heart failure while on a regimen of prescribed treatment). (R. at 17.) The section of the ALJ's opinion addressing step three is two sentences long and contains no analysis. The ALJ, however, adequately explained his finding elsewhere in the opinion. *See Harris*, 2009 WL 801347 at *7.

Listing 1.04 requires that the claimant have a spinal disorder "resulting in compromise of a nerve root . . . or the spinal cord[,]" along with

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app'x 1, § 1.04. Although Browning has a spinal disorder, degenerative disc disease, the ALJ made factual findings that negate a finding that Browning met or equaled "all" of the elements of Listing 1.04. *See Zebley*, 493 U.S. at 530, 531. For instance, Plaintiff does not appear to allege that she meets Listing 1.04B or Listing 1.04C, nor has Plaintiff identified any part of the record that would support either a finding of spinal arachnoiditis (painful inflammation of the arachnoid lining in the spine) under Listing 1.04B or lumbar spinal stenosis resulting in pseudoclaudication (narrowing of the spinal canal causing pressure on the spinal root nerves) under Listing 1.04C.

Plaintiff contends that the record includes evidence that she meets or equals Listing 1.04A, but the ALJ's factual findings reject Plaintiff's arguments. While a July 2006 MRI showed a bulging disc that effaces the thecal sac and extends into the foramina, the ALJ found that Browning's back pain was successfully treated with steroid injunctions in October 2006 and that the record included no additional significant findings since that time. (R. at 19, 383.) Similarly, the ALJ noted Dr. Layton's examination, which took place seven months after the alleged disability date. (R. at 19, 260.) Dr. Layton's examination revealed no tenderness upon palpation of the spine and showed Plaintiff's ability to hop on each leg, walk

without difficulty, get up from a chair, get on to the examining table, do a half squat, and sit, stand, walk, and carry without difficulty. (R. at 19.) Although the record includes positive straight leg tests, the ALJ found persuasive the fact that at least one straight leg test was negative. (R. at 19.); *see Andrews*, 53 F.3d at 1039 (noting the ALJ's responsibility for resolving conflicts in evidence); *Batson*, 359 F.3d at 1198 (requiring that a reviewing court defer to the ALJ's conclusion where evidence allows multiple interpretations). Plaintiff raises evidence from Dr. Wilson and physician assistant Earlywine, but the ALJ explained why their testimony was unpersuasive. (R. at 20.) Dr. Wilson had treated Browning for only a limited time and failed to cite any specific evidence to support his medical opinions. (R. at 20.); *see Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (allowing an ALJ to reject a treating physician's opinion that is contradicted by the opinion of another physician, where the ALJ gives specific and legitimate reasons supported by substantial evidence in the record); *see also* 20 C.F.R. § 404.1527(d)(2)(I) (explaining that the ALJ may consider the length of treatment in weighing medical opinion); *Batson*, 359 F.3d at 1195 (rejecting physician's opinion where it was in the form of a checklist, lacked substantive medical findings to support the conclusion, and was contradicted by other evidence). Likewise, the ALJ concluded that Earlywine, as a physician assistant, was not an acceptable medical source and offered opinions that were not supported by the medical evidence. (R. at 20.); *see* SSR 06-03, 2006 WL 2329939, at *2 (Aug. 9, 2006) (explaining the importance of "acceptable medical sources" vis-a-vis "other sources," such as opinions from physician assistants).[2]

In addition to Listing 1.04, Browning's impairments do not meet Listing 4.02, which requires the following:

---

[2] Browning, in passing, contends that she either met *or equaled* a listed impairment. To the extent Browning contends she equaled a listed impairment, this argument fails because she has not explained how any of her impairments equal the severity of all the elements of a listed impairment. *See Lewis*, 236 F.3d at 514 (affirming where the ALJ did not discuss the claimant's impairments or compare them to any listing, but where the claimant "offered no theory" and "pointed to no evidence" supporting a finding that he met or equaled a listed impairment).

> [c]hronic heart failure while on a regimen of prescribed treatment," with medically-documented systolic failure or diastolic failure, and either (1) very serious limitations in daily activities, (2) three or more episodes of congestive heart failure within a consecutive twelve-month period, with evidence of fluid retention requiring acute extended physician intervention for periods of twelve hours or more, separated by periods of stabilization, or (3) an inability to perform an exercise tolerance test at a workload equivalent to 5 METs or less due to several enumerated factors.

20 C.F.R. pt. 404, subpt. P, app'x 1, § 1.04. Although the record indicates heart-based impairments, Browning does not argue that Listing 4.02 applies. And the record does not clearly include any evidence indicating that her impairments meet or equal "all" of the requirements of Listing 4.02. *See Zebley*, 493 U.S. at 530, 531 (requiring that a claimant meet all of the listing requirements); *see also Lewis*, 236 F.3d at 514 (affirming where claimant offered no legal theory or persuasive evidence supporting a finding that an impairment equaled a listed impairment).

Furthermore, even if the ALJ's discussion at step three was insufficient as it relates to either the heart or spinal impairments, this error was harmless because, as discussed above, the record is devoid of evidence establishing that Browning's impairments met or equaled any listed impairment, and Browning points the Court to none. *See Burch v. Barnhart*, 400 F.3d at 679 (holding that harmless errors do not warrant reversal).

**B.     Subjective Complaint Testimony**

"Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on [the] lack of objective medical evidence to fully corroborate the alleged severity of [those symptoms]." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). Rather, the ALJ must determine whether the impairment or combination of impairments "could reasonably be expected to produce [the] pain or other symptoms." *Batson*, 359 F.3d at 1196 (quotation omitted). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find [the claimant] not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins*, 466 F.3d at 883. The ALJ may consider "at least" the following factors when weighing the claimant's credibility:

> [the] claimant's reputation for truthfulness, inconsistencies either in [the] claimant's testimony or between her testimony and her conduct, [the] claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the] claimant complains.

*Thomas v. Barnhart*, 278 F.3d 947, 958–59 (internal quotations omitted).

Browning contends the ALJ erred by rejecting her subjective complaint testimony, but the ALJ properly found Plaintiff's testimony less persuasive. Browning testified that she has difficulty performing basic household chores, that she needs to lie down six to eight hours per day and sit in a recliner for up to three hours per day, that she suffers from various mental ailments, and that her medication causes her to be drowsy and to have stomach problems. The ALJ concluded that the claimant's impairments could reasonably be expected to produce the alleged symptoms, but that Browning's statements concerning the intensity, persistence, and limiting effects of these symptoms were "not credible to the extent that they are inconsistent with the [RFC] assessment." (R. at 19.)

Aside from the medication side-effects issue, as discussed below, the ALJ gave clear and convincing reasons why the "inconsistent" evidence in the record *negated* Browning's subjective complaint testimony and did not, as Plaintiff contends, reject Plaintiff's assertions solely because they *lacked* corroborating medical evidence. (R. at 19.) For example, the ALJ weighed the evidence of the state agency medical consultant, who concluded that Browning could perform light work with additional environmental and postural limitations.[3] (R. at 19, 269–72.) The same state medical consultant also made findings supporting the ALJ's adverse credibility determination, finding Browning's subjective complaints unreliable because her complaints did not conform to the available medical evidence. (R. at 273.) In addition, the ALJ described how Browning's daily activities were not as debilitating as she asserted, based on Dr. Layton's exam, which took place seven months after the alleged onset date of disability. (R. at 19, 260.) The ALJ explained that, during Dr. Layton's examination,

---

[3] The ALJ gave this opinion significant weight, but still gave Browning the "full benefit of doubt" by concluding that her exertional capacity was sedentary, rather than light.

Browning was able to dress and undress, get up from a chair, get on the examining table, sit, stand, walk, walk on her heels and toes, bend at the hips to seventy or eighty degrees, do a half squat, hop on each leg, and perform a negative straight raising test. (R. at 19, 260.) Regarding Browning's back pain, the ALJ concluded that the treatment she received in October 2006 solved the problem because the record included no additional findings since that time. (R. at 19.) Likewise, the ALJ noted that Browning had only one significant cardiovascular accident, which, together with the diagnostic tests performed in concert with it, did not support Browning's contention that she had coronary artery disease. (R. at 19.) Browning also testified that she suffered from various mental symptoms, but the ALJ explained that this was inconsistent with her conduct and the type of symptoms she was claiming because she had never sought mental health treatment. (R. at 19, 526–27); *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (noting that "an unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of the claimant's pain testimony").

On the other hand, the ALJ erred by rejecting Browning's statements that her medication caused dizziness, pain, and drowsiness. The ALJ stated only that "[t]here is nothing in the record to support the claimant's alleged side effects with her medication regimen[.]" (R. at 19.) Because the ALJ had previously determined that the Browning's medically-determinable impairments could reasonably be expected to produce her alleged symptoms, the ALJ could reject Browning's testimony about her side effects only by stating clear and convincing reasons.[4] *Robbins*, 466 F.3d at 883. It appears that the ALJ rejected Browning's statement based "solely on [the] lack of objective medical evidence to fully corroborate the alleged severity of" her symptoms, *Moisa*, 367 F.3d at 885, *i.e.* solely because "[t]here [was] nothing in the record to support" Browning's assertions, (R. at 19). Defendant asserts that this error was harmless because the ALJ gave other reasons for

---

[4] No allegation of malingering was offered by either the ALJ or the Commissioner in this case.

discounting Plaintiff's subjective statements, but those other reasons (as discussed above) relate not to the statements about medication side-effects, but instead to other subjective complaints; thus, the errors are not harmless.

The next issue, therefore, is whether to remand for benefits by crediting-as-true Browning's statements about her side-effects, or whether to remand for further findings. Generally, if an "ALJ fails to articulate sufficient reasons for refusing to credit" a claimant's subjective complaint testimony, "the Commissioner must accept, as a matter of law," that testimony under the "credit-as-true" rule. *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009). But Ninth Circuit law is unclear as to whether the credit-as-true rule is mandatory and in what circumstances it applies. *See id.* (discussing the within-circuit conflict); *compare Lester*, 81 F.3d at 834 (holding that the credit-as-true rule is mandatory only where a claimant would be disabled if the testimony were credited) *with Connett*, 340 F.3d at 876 (discussing the conflict and holding that the doctrine is not mandatory because the court has "some flexibility" in applying the theory). This District, however, has held that, in some cases, remand for further findings is appropriate and an "ALJ will not be required to credit-as-true plaintiff's pain allegations." *Santiago v. Astrue*, 2010 WL 466052, at *23–24 (D. Ariz. Feb. 10, 2010). Such a situation may include, for example, where it is "not 'clear from the record that the ALJ would be required to find [plaintiff] disabled were such evidence credited[]'" or where the record is unclear as to "'whether the ALJ would still find [the plaintiff] not credible without relying on the improper reasons addressed.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *Green v. Astrue*, 2009 WL 310284, at *6 (D. Ariz. Feb. 6, 2009)).

Here, remand for further findings is appropriate because, even if the ALJ credit-as-true Browning's statements about the medication's side effects, the record is unclear as to whether the ALJ would be required to find Browning disabled. *See Santiago*, 2010 WL 466052, at *23. And while Browning stated that she suffers from dizziness, pain, and drowsiness, the record does not establish exactly how severe these symptoms were; nor does the record have an explanation of the degree to which these symptoms might affect

- 13 -

1  Browning's ability to work. Moreover, remand for further findings is appropriate because
2  it is not clear whether the ALJ would still find Browning not credible, such as if other
3  evidence in the record supported an adverse credibility finding. *See id.* at *24.

### C. Ability to Return to Previous Work

At step four, a "claimant establishes a prima facie case of disability by showing that [her] impairments prevent [her] from doing [her] previous job." *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).

Plaintiff argues that the ALJ erred by not receiving specific and accurate Dictionary of Occupational Titles ("D.O.T") numbers for the positions that Richter testified would represent Browning's past relevant work. While the ALJ identified a sedentary position of "administrative assistant" with a Specific Vocational Preparation ("SVP")[5] level of six, the D.O.T. does not list such a position. Defendant admits that the D.O.T. includes no such position, but instead includes a similar position entitled "administrative assistant - any industry," which has an SVP of seven, rather than six. D.O.T. 169.167-010, 1991 WL 647424 (1991). This error, however, is harmless because Plaintiff does not explain how a one-level difference in SVP changes her ability to physically perform certain jobs. *See Burch*, 400 F.3d at 679 (holding that harmless errors do not justify reversal). The SVP difference is irrelevant because Browning complains of physical ailments, not of an inability to learn particular job skills.

Plaintiff next contends that the ALJ erred by stating that "the vocational expert's testimony is consistent with the information contained in the [D.O.T.]" even though the ALJ

---

[5] "SVP . . . is defined in the D.O.T. as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1230 n. 4 (9th Cir. 2009) (citing D.O.T., app'x C at 1009). SVP 6 means "over 1 year up to and including 2 years," and SVP 7 means "over two years up to and including 4 years." *Id.* (citing D.O.T., app'x C at 1009).

did not ask Richter whether her opinion was consistent with the D.O.T. (R. at 20, 535–39.) The Ninth Circuit requires, at step five, that an ALJ "'ask' the vocational expert 'if the evidence he or she has provided' is consistent with the [D.O.T.] and obtain a reasonable explanation for any apparent conflict." *Massachi v. Astrue*, 486 F.3d 1149, 1152–53 (9th Cir. 2007) (citing SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000)). In this case, the ALJ did not ask Richter whether her opinion was consistent with the D.O.T. (*See* R. at 536–43.) This is not dispositive, however, because the ALJ never explicitly made any step five findings. Because the ALJ never reached step five, the ALJ's superfluous statement that Richter's testimony was consistent with the D.O.T. is harmless error to the extent the ALJ's opinion is otherwise correct. *See Burch*, 400 F.3d at 679 (holding that harmless errors do not justify reversal). Plaintiff argues that this discrepancy makes it "impossible to tell if the ALJ properly relied" on Richter's testimony. (Dkt. # 14 at 14.) Plaintiff offers no authority, however, holding that an ALJ's refusal to ask the vocational expert about her testimony's consistency with the D.O.T. renders the ALJ's step four analysis suspect.

Next, Plaintiff challenges the ALJ's statement that her skills were transferable to the jobs of office assistant and legal assistant; these jobs required a "light" workload, but the ALJ concluded that Browning had skills transferable to these positions even though she could perform only sedentary work. (R. at 20, 536.) The issue of transferable skills, however, is irrelevant at step four, which examines whether a claimant can perform her past relevant work, not whether she can make an adjustment to other work in the national economy. *Compare* 20 C.F.R. § 404.1520(a)(4)(iv) *with id.* § 404.1420(a)(4)(v). Plaintiff offers no argument why this was not harmless error.

### D. Inconsistency With Commissioner's Later Determination of Disability

Plaintiff offers a July 28, 2009 Notice of Award by the Commissioner finding Browning disabled as of October 26, 2008. (Dkt. # 14, Ex. 1.) Plaintiff seeks remand to "resolve this conflict" between the Commissioner's decision and the ALJ's prior decision. Because evidence of this decision was not included in the administrative record, remand is appropriate only if this new evidence is "material" and if there is "good cause for the late

1 submission." *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001) (citing 42 U.S.C. § 405(g) (requiring that Commissioner "file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based")). While a subsequent social security decision may constitute material evidence, the subsequent decision is material only if it "'bear[s] directly and substantially on the matter in dispute,' and if there is a 'reasonabl[e] possibility that the new evidence would have changed the outcome of the . . . determination.'" *Id.* (quoting *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984)). The subsequent opinion is not material, however, if it relies on different facts, such as new medical evidence, time periods, or age classifications. *See Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001) (declining to remand because the second ALJ's decision relied on different medical evidence, relevant time period, and age classification than the first ALJ's decision did).

Here, after the ALJ rejected Browning's application, the Commissioner determined that Browning was disabled as of October 26, 2008. The decision appealed here finds Browning not disabled as of September 25, 2005—a difference of more than three years. The Court cannot determine, therefore, whether there is a reasonable possibility that the new decision would have changed the outcome determination. *See Bruton*, 268 F.3d at 827. Plaintiff has not presented anything explaining what facts the Commissioner considered in making the October 2008 determination, so Plaintiff has not demonstrated why this second decision justifies reversal of the ALJ's decision. It is not apparent that the two decisions in this case relied on the same facts because the relevant time period differed in each case. Not only was the Commissioner's second decision issued more than one year after the ALJ's decision was issued, but also the second decision found Browning disabled as of October 2008, three years after the alleged September 2005 date of disability at issue before the ALJ. This difference in time raises the likelihood that the two decisions relied on different medical and subjective evidence, and the Court will not assume to the contrary where Plaintiff has failed to provide the Court with a record sufficient to determine that the same evidence was

the basis for both decisions. Accordingly, the Court finds that the second decision is not a basis for reversal.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED-IN-PART** and **VACATED-IN-PART**.

**IT IS FURTHER ORDERED** that this case is **REMANDED** for further findings as set forth in this Order.

DATED this 15th day of April, 2010.

_____
G. Murray Snow
United States District Judge